**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**EILEEN ZAJAC,**

Plaintiff,

v.

**LYFE MARKETING LLC, and NATALIE WEST, individually,**

Defendants.

**CIV. ACTION NO. 2:26-cv-007542**

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY DEMAND

Plaintiff, Eileen Zajac, by and through undersigned counsel, The Lacy Employment Law Firm LLC, hereby files this Complaint against Defendants and states as follows:

## PROCEDURAL AND ADMINISTRATIVE REMEDIES

1. All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein at length.

2. Venue is proper in the District Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

3. On or about January 29, 2026, Plaintiff dual-filed a charge with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), Charge No. 530-2026-02013, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e et seq. ("Title VII"), disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), and violations of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"). See EEOC Charge of Discrimination, attached as Exhibit 1.

4. On September 17, 2026, the EEOC issued a Determination and Notice of Rights ("Right to Sue"), and Plaintiff timely filed the above-captioned action on or before 90 days from receipt of the Right to Sue that the EEOC issued. See Exhibit 2.

5. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

**PARTIES**

6. Plaintiff Eileen Zajac ("Plaintiff" or "Ms. Zajac") is an adult female who was previously employed by LYFE Marketing LLC. Ms. Zajac resides at 234 Parker Ave, Philadelphia, PA 19128.

7. Defendant LYFE Marketing LLC ("LYFE Marketing" or "Defendant LYFE"), upon information and belief, is a limited liability company with a principal place of business at 168 S Rock Island Dr, Eatonton, GA 31024. At all times relevant hereto, LYFE Marketing employed fifteen (15) or more employees and was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), the ADA, 42 U.S.C. § 12111(5), and the PHRA, 43 P.S. § 954(b). At all times relevant hereto, LYFE Marketing was a plan sponsor and administrator within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), and was obligated to provide continuation coverage notices pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1166.

8. Defendant Natalie West ("West") is an adult individual who, at all times relevant hereto, served as Head of Operations at LYFE Marketing and was Plaintiff's supervisor. Defendant West is named individually solely with respect to Plaintiff's claims under the PHRA.

**FACTUAL BACKGROUND**

9. LYFE Marketing hired Plaintiff on April 25, 2022, as a Senior Account Manager. During her tenure, Ms. Zajac received five promotions in three years and was consistently praised as a top performer by management.

10. At the time of her termination, Plaintiff's base salary was $80,000 annually.

11. Throughout her employment, Ms. Zajac was required to work fifteen to sixteen (15–16) hours per day, regularly submitting client deliverables between 1:00 and 2:00 AM. She repeatedly complained to management, including Defendant West and Supervisor Brandon Mimnaugh, about these unreasonable and unsustainable working conditions, both verbally and in writing.

12. In late March 2025, Ms. Zajac became pregnant.

13. In early April 2025, Ms. Zajac suffered a miscarriage.

14. On April 4, 2025-while Ms. Zajac was pregnant and actively miscarrying-LYFE Marketing demoted her and reduced her salary by $10,000, from $80,000 to $70,000 annually.

15. The demotion was not based on any performance deficiency. Ms. Zajac had received no performance improvement plan and no written warnings. Management had recently told her she was "getting everything in on time" and was "a top performer."

16. The stated reason for the demotion was to "reduce her stress." This reason was pretextual. Ms. Zajac had explicitly told management that the pay cut would cause severe financial hardship and that her electricity was at risk of disconnection. Defendant LYFE knew the salary reduction would worsen, not reduce, her circumstances.

17. On April 8, 2025-just four days after demoting Ms. Zajac while she was actively miscarrying-management called her into a private meeting and asked whether she planned to

take "legal action" against LYFE Marketing. This question demonstrated that Defendant LYFE knew it had acted unlawfully and sought to discourage Ms. Zajac from asserting her rights.

18. Approximately one month later, in May 2025, LYFE Marketing restored Ms. Zajac to her original position and salary. This rapid restoration was inconsistent with LYFE Marketing's normal three-month capacity maintenance requirement, further evidencing that the demotion was pretextual and caused by her pregnancy.

19. The combination of extreme work demands, the trauma of being demoted while miscarrying, the resulting financial devastation, and the continuing hostile treatment caused Ms. Zajac's mental health to deteriorate catastrophically.

20. By July 2025, Ms. Zajac had developed Major Depressive Disorder with suicidal ideation, a severe mental illness documented by her primary care physician, Dr. Priscilla Chiu.

21. Dr. Chiu's medical records document: (a) that Ms. Zajac's mental health decline was directly caused by workplace stress and discrimination; (b) the need to double one of Ms. Zajac's psychiatric medications; (c) the addition of new psychiatric medications; (d) Dr. Chiu's serious concerns about Ms. Zajac's safety; (e) Dr. Chiu's recommendation that Ms. Zajac go to the emergency room if she felt she might harm herself; and (f) Dr. Chiu's recommendation for intensive outpatient psychiatric treatment.

22. Ms. Zajac was, at times, actively suicidal as a result of Defendants' discriminatory treatment. She experienced constant anxiety about being fired, felt watched and targeted, and lived in fear of further retaliation.

23. Ms. Zajac disclosed her disability-Major Depressive Disorder with suicidal ideation-to LYFE Marketing and provided medical documentation from Dr. Chiu. She requested

a reasonable accommodation: to work normal hours rather than fifteen to sixteen hours per day, in order to manage her mental illness and prevent further deterioration.

24. On December 1, 2025, Ms. Zajac requested a meeting with management to discuss her accommodation needs and the unsustainable working conditions. During that very meeting-the meeting Ms. Zajac had called to request disability accommodations-LYFE Marketing terminated her employment, effective immediately.

25. No reason was given during the termination meeting. Ms. Zajac asked repeatedly for an explanation but received none.

26. Days later, after multiple requests by Ms. Zajac, LYFE Marketing sent a vague separation notice claiming “behavior inconsistent with company policies” and “violation of company social media policies.” Neither basis was ever explained or substantiated despite Ms. Zajac’s repeated requests for clarification.

27. None of the purported policy violations cited by LYFE Marketing had ever been raised with Ms. Zajac prior to the termination meeting. No written warning, counseling, or progressive discipline was issued in connection with any alleged social media conduct.

28. LYFE Marketing terminated Ms. Zajac without severance, immediately before the holidays.

29. LYFE Marketing initially shorted Ms. Zajac’s final paycheck by eight hours, correcting it only after she complained.

30. Upon Ms. Zajac’s termination, LYFE Marketing immediately terminated her health insurance coverage.

31. LYFE Marketing failed to provide Ms. Zajac with timely and adequate notice of her right to elect continuation coverage under COBRA, as required by 29 U.S.C. § 1166.

32. As a direct result of LYFE Marketing's failure to provide required COBRA notice, Ms. Zajac was left without health insurance while unemployed and suffering from Major Depressive Disorder with suicidal ideation.

33. In December 2025, Ms. Zajac became ill and was required to pay out-of-pocket for urgent care because Defendant LYFE had failed to provide her with COBRA continuation coverage notice. She continues to require ongoing psychiatric treatment and medication that she struggles to afford without employment or health insurance.

## COUNT I
**Violation of Title VII of the Civil Rights Act of 1964, as Amended by the Pregnancy Discrimination Act**
***Sex Discrimination / Pregnancy Discrimination and Wrongful Termination***
**(Against Defendant LYFE Marketing LLC)**

34. All preceding paragraphs are incorporated by reference as if set forth herein at length.

35. Plaintiff is a member of a protected class by virtue of her sex, female, and her pregnancy.

36. Defendant LYFE Marketing was at all times an employer with more than fifteen (15) employees and subject to Title VII.

37. Plaintiff was qualified for her position and performed her duties satisfactorily, as demonstrated by five promotions in three years, consistent positive feedback, and the absence of any performance improvement plan or documented deficiency.

38. Defendant LYFE Marketing subjected Plaintiff to discriminatory terms and conditions of employment, including demotion and a $10,000 salary reduction while she was pregnant and miscarrying, and terminated her employment.

39. The stated reasons for the demotion and termination are pretextual. The demotion occurred without any performance justification, was reversed within approximately one month,

and coincided precisely with Plaintiff's pregnancy and miscarriage. The termination occurred on the same day Plaintiff requested a disability accommodation.

40. Defendant LYFE Marketing's conduct was intentional, malicious, and/or in reckless disregard of Plaintiff's federally protected rights.

41. As a result of the unlawful, discriminatory employment practices in violation of Title VII, Plaintiff sustained damages including loss of earnings, loss of benefits, loss of future earning power, back pay, front pay, and emotional distress.

**<u>COUNT II</u>**
**Violation of PA ST 43 P.S. § 955, the Pennsylvania Human Relations Act ("PHRA"), as Amended**
***Sex Discrimination / Pregnancy Discrimination and Wrongful Termination***
**(Against Defendants LYFE Marketing LLC and Natalie West)**

42. All preceding paragraphs are incorporated by reference as if set forth herein at length.

43. Plaintiff is a member of a protected class by virtue of her sex, female, and her pregnancy.

44. Defendant LYFE Marketing was at all times an employer with more than four (4) employees and subject to the PHRA.

45. Defendant LYFE Marketing, through the acts and omissions of Defendant West and others acting within the scope of their employment, subjected Plaintiff to discriminatory terms and conditions of employment and terminated her employment because of her sex and pregnancy, in violation of 43 P.S. § 955(a).

46. Defendant West, as Plaintiff's supervisor and a person who made or substantially influenced the decisions to demote Plaintiff and to terminate her employment, aided, abetted, incited, and/or compelled the discriminatory conduct alleged herein and is individually liable under 43 P.S. § 955(e).

47. As a result of the unlawful, discriminatory employment practices in violation of the PHRA, Plaintiff sustained damages including loss of earnings, loss of benefits, loss of future earning power, back pay, front pay, and emotional distress.

**COUNT III**
**Violation of the Americans with Disabilities Act of 1990, as Amended**
***Disability Discrimination and Failure to Accommodate***
**(Against Defendant LYFE Marketing LLC)**

48. All preceding paragraphs are incorporated by reference as if set forth herein at length.

49. Plaintiff is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102. Plaintiff's Major Depressive Disorder with suicidal ideation substantially limits one or more major life activities, including but not limited to thinking, concentrating, sleeping, caring for herself, and the operation of neurological and brain functions.

50. Defendant LYFE Marketing was at all times an employer with more than fifteen (15) employees and subject to the ADA.

51. Plaintiff performed the essential functions of her position satisfactorily and was a qualified individual with a disability.

52. Plaintiff disclosed her disability to LYFE Marketing and provided supporting medical documentation from Dr. Priscilla Chiu.

53. Plaintiff requested a reasonable accommodation-reduction to normal working hours in lieu of the required fifteen-to-sixteen-hour workdays-to manage her disability and prevent further deterioration.

54. LYFE Marketing failed to engage in the interactive process and failed to provide Plaintiff with a reasonable accommodation.

55. LYFE Marketing terminated Plaintiff's employment on the same day she requested an accommodation meeting, without providing any accommodation, without engaging in the interactive process, and without any legitimate, non-discriminatory justification.

56. Defendant LYFE Marketing's conduct was intentional, malicious, and/or in reckless disregard of Plaintiff's federally protected rights.

57. As a result of the unlawful, discriminatory employment practices in violation of the ADA, Plaintiff sustained damages including loss of earnings, loss of benefits, loss of future earning power, back pay, front pay, and emotional distress.

## COUNT IV
**Violation of PA ST 43 P.S. § 955, the Pennsylvania Human Relations Act ("PHRA"), as Amended**
***Disability Discrimination and Failure to Accommodate***
**(Against Defendants LYFE Marketing LLC and Natalie West)**

58. All preceding paragraphs are incorporated by reference as if set forth herein at length.

59. Plaintiff is a qualified individual with a disability within the meaning of the PHRA.

60. Defendant LYFE Marketing was at all times an employer with more than four (4) employees and subject to the PHRA.

61. Defendant LYFE Marketing, through the acts and omissions of Defendant West and others acting within the scope of their employment, failed to accommodate Plaintiff's disability and terminated her employment on the same day she requested an accommodation, in violation of 43 P.S. § 955(a).

62. Defendant West aided, abetted, incited, and/or compelled the discriminatory conduct alleged herein and is individually liable under 43 P.S. § 955(e).

63. As a result of the unlawful, discriminatory employment practices in violation of the PHRA, Plaintiff sustained damages including loss of earnings, loss of benefits, loss of future earning power, back pay, front pay, and emotional distress.

**COUNT V**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as Amended**
**(Against Defendant LYFE Marketing LLC)**

64. All preceding paragraphs are incorporated by reference as if set forth herein at length.

65. Plaintiff engaged in protected activity under Title VII by complaining, verbally and in writing, to management about discriminatory and unlawful working conditions, and by opposing the pregnancy discrimination she experienced beginning April 4, 2025.

66. Defendant LYFE Marketing was aware of Plaintiff's protected activity.

67. Defendant LYFE Marketing subjected Plaintiff to materially adverse employment actions, including demotion on April 4, 2025, and termination on December 1, 2025.

68. The immediate temporal proximity between Plaintiff's protected activity and Defendants' adverse actions, together with the absence of any legitimate performance-based justification, establishes that the adverse actions were causally connected to Plaintiff's protected activity.

69. Defendant LYFE Marketing's retaliatory conduct was intentional, malicious, and/or in reckless disregard of Plaintiff's federally protected rights.

70. As a result of Defendant LYFE Marketing's unlawful retaliation, Plaintiff sustained damages including loss of earnings, loss of benefits, loss of future earning power, back pay, front pay, and emotional distress.

**COUNT VI**
**Retaliation in Violation of the Americans with Disabilities Act of 1990, as Amended**
**(Against Defendant LYFE Marketing LLC)**

71. All preceding paragraphs are incorporated by reference as if set forth herein at length.

72. Plaintiff engaged in protected activity under the ADA by disclosing her disability to LYFE Marketing, providing medical documentation, and requesting a reasonable accommodation.

73. Defendant LYFE Marketing was aware of Plaintiff's protected activity.

74. Defendant LYFE Marketing terminated Plaintiff's employment on the same day she requested a meeting to discuss her accommodation needs, without providing any explanation, without engaging in the interactive process, and without any prior progressive discipline.

75. The immediate temporal proximity between Plaintiff's request for accommodation and her termination, together with the absence of any legitimate, non-discriminatory justification, establishes causation.

76. Defendant LYFE Marketing's retaliatory conduct was intentional, malicious, and/or in reckless disregard of Plaintiff's federally protected rights.

77. As a result of Defendant LYFE Marketing's unlawful retaliation, Plaintiff sustained damages including loss of earnings, loss of benefits, loss of future earning power, back pay, front pay, and emotional distress.

**COUNT VII**
**Retaliation in Violation of PA ST 43 P.S. § 955, the Pennsylvania Human Relations Act ("PHRA"), as Amended**
**(Against Defendants LYFE Marketing LLC and Natalie West)**

78. All preceding paragraphs are incorporated by reference as if set forth herein at length.

79. Plaintiff engaged in protected activity under the PHRA by opposing pregnancy discrimination and by requesting a disability accommodation.

80. Defendant LYFE Marketing, through the acts and omissions of Defendant West and others acting within the scope of their employment, retaliated against Plaintiff for engaging in protected activity by demoting her on April 4, 2025, and terminating her employment on December 1, 2025, in violation of 43 P.S. § 955(d).

81. Defendant West aided, abetted, incited, and/or compelled the retaliatory conduct alleged herein and is individually liable under 43 P.S. § 955(e).

82. As a result of Defendants' unlawful retaliation in violation of the PHRA, Plaintiff sustained damages including loss of earnings, loss of benefits, loss of future earning power, back pay, front pay, and emotional distress.

**COUNT VIII**
**Violation of ERISA / COBRA - Failure to Provide Notice of Continuation Coverage**
**29 U.S.C. § 1166**
**(Against Defendant LYFE Marketing LLC)**

83. All preceding paragraphs are incorporated by reference as if set forth herein at length.

84. At all times relevant hereto, LYFE Marketing maintained a group health plan within the meaning of ERISA, 29 U.S.C. § 1167, and was a plan administrator obligated to provide COBRA continuation coverage notices under 29 U.S.C. § 1166.

85. Ms. Zajac's termination on December 1, 2025, constituted a qualifying event under COBRA, 29 U.S.C. § 1163(2), triggering LYFE Marketing's obligation to provide timely written notice of Ms. Zajac's right to elect continuation coverage.

86. LYFE Marketing failed to provide Ms. Zajac with timely and adequate written notice of her right to elect COBRA continuation coverage within the period required by 29 U.S.C. § 1166.

87. As a direct result of LYFE Marketing's failure, Ms. Zajac was deprived of health insurance coverage while unemployed and suffering from Major Depressive Disorder with suicidal ideation, requiring ongoing psychiatric treatment and medication.

88. In December 2025, Ms. Zajac was forced to pay out-of-pocket for urgent medical care she would have received under COBRA continuation coverage had LYFE Marketing complied with its statutory obligations.

89. Pursuant to 29 U.S.C. § 1132(c)(1), a plan administrator who fails to provide required COBRA notices is liable for statutory penalties of up to $110 per day from the date of the failure, as well as such other relief as the Court deems proper.

90. Defendant LYFE Marketing is liable to Plaintiff for statutory penalties, actual damages arising from the denial of continuation coverage, and such other equitable relief as this Court deems appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a. Declaring the acts and practices complained of herein to be in violation of Title VII, the ADA, the PHRA, and ERISA/COBRA;

b. Enjoining and permanently restraining the violations alleged herein;

c. Entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

d. Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

e. Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, development of disabling mental illness, and loss of life's pleasure, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

f. Awarding punitive damages to Plaintiff under Title VII and the ADA;

g. Awarding statutory penalties under 29 U.S.C. § 1132(c)(1) for LYFE Marketing's failure to provide timely COBRA continuation coverage notice;

h. Awarding Plaintiff all medical expenses incurred as a result of Defendants' conduct, including psychiatric treatment and medication;

i. Awarding Plaintiff such other damages as are appropriate under Title VII, the ADA, the PHRA, and ERISA;

j. A jury trial is demanded on all triable issues in this case;

k. Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

l. Granting such other and further relief as this Court may deem just, proper, or equitable, including other equitable and injunctive relief, providing restitution for past violations and preventing future violations.

Respectfully submitted,

*/s/ Rick Haarbauer, Esq.*
Rick Haarbauer (PA. 333454)
Andrew Lacy, Jr., Esq. (PA. 321232)
**THE LACY EMPLOYMENT LAW FIRM LLC**
3675 Market Suite, Suite 200
Philadelphia, PA 19104
(t) 412-301-3908
rickhaarbauer@employment-labor-law.com

Dated: September 30, 2026

*Counsel for Plaintiff*